```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
```

CHRISTOPHER S. JOHNSON,            )
                                   )
    Plaintiff,                     )   CASE NO.   C05-748-MJP-JPD
                                   )              C05-957-MJP-JPD
  v.                               )
                                   )
                                   )
ELDON VAIL, *et al.*,              )   REPORT & RECOMMENDATION
                                   )
    Defendants.                    )
_____)

## INTRODUCTION

Plaintiff Christopher Johnson is incarcerated in the Special Offender Unit of the Monroe Correctional Complex in Monroe, Washington. He has filed a civil rights action under 42 U.S.C. § 1983. In his complaint, plaintiff alleges that he is a "Senior U.S. Constable," that he is not mentally ill, and that prison officials have required him to take anti-psychotic medication to which he is allergic. (Doc. #8). Plaintiff has also filed an emergency motion for a preliminary injunction (Doc. #15), and numerous other pleadings. Having reviewed all the pleadings filed in this matter, the court recommends, for the reasons set forth below, that plaintiff's motion for preliminary injunction and related motions be denied.

## PROCEDURAL HISTORY

The procedural history of this matter is lengthy but a summary is necessary to provide a context for the pending motions. On April 14, 2005, plaintiff filed a proposed civil rights complaint along with an application for leave to proceed *in forma pauperis*. (Doc. #1). On June 3, 2005, the court found that "on at least three prior occasions [plaintiff] had cases dismissed as frivolous or for

REPORT & RECOMMENDATION
PAGE - 1

failure to state a claim upon which relief can be granted," and thus, was barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).[1]  (Doc. #10).  Nonetheless, the court found that plaintiff could proceed with this lawsuit because he qualified for a statutory exception to the bar by alleging that he was "under imminent danger of serious physical injury."  *See* 28 U.S.C. § 1915(g).  Although the court recognized that defendants disputed that plaintiff was in imminent danger, the court, for the limited purpose of considering plaintiff's *in forma pauperis* application, and "in an abundance of caution," found that he satisfied the exception to the three strikes rule.  (Doc. #10).  Accordingly, this lawsuit was allowed to proceed.[2]

On June 16, 2005, the court consolidated the present action with Case No. C05-957, because the two cases raised the same issue.  (Doc. #12).  On June 30, 2005, plaintiff filed an emergency motion for a preliminary injunction ("motion"), based on the allegedly grave risk to his health posed by the administration of anti-psychotic medication.  (Doc. #15).  On July 5, 2005, the court directed defendants to respond to the motion and noted the matter for consideration on July 29, 2005.  (Doc. #16).

On July 13, 2005, defendants filed their response to plaintiff's motion.  (Doc. #18).  Attached to the response was a declaration by Thomas Greisamer, M.D., the chief psychiatrist at Monroe Correctional Complex ("MCC").  Dr. Greisamer stated in his declaration that plaintiff had been seen by him, by a licensed clinical psychologist, and by another psychiatrist, who together diagnosed plaintiff as suffering from "Delusional Disorder Persecutory and grandiose [sic] type."  (Doc. #18, Ex. 1 at 2).  Dr. Greisamer further stated that he considered plaintiff to be "gravely disabled," and

---

[1]  Using the framework provided by the Ninth Circuit in *Andrews v. King*, 398 F.3d 1113, 1120 (9th Cir. 2005), the court found that plaintiff had accumulated three strikes by having the following cases dismissed:  *Johnson v. Phipps, et al.*, Case No. C04-5190-RJB, *Johnson v. Washington Dep't of Corrections, et al.*, Case No. C05-5086-RBL, and *Johnson v. Reichert, et al.*, Case No. C02-674-JCC.

[2]  In directing the Clerk to serve plaintiff's complaint on defendants, the court dismissed the claim against the Washington Department of Corrections as barred by the Eleventh Amendment.  *See Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

REPORT & RECOMMENDATION
PAGE - 2

1  that following a hearing pursuant to *Washington v. Harper*, 494 U.S. 210 (1990), prison officials had

2  ordered plaintiff to be involuntarily medicated.[3] (*Id.*)  Dr. Greisamer also added that plaintiff had not

3  shown any allergic reaction to his medication and had lost no weight.  (*Id.* at 3).

4       Plaintiff filed a reply to defendants' response on July 20, 2005.  (Doc. #21).  Attached to

5  plaintiff's reply was a declaration of "John Henry Lee, M.D., Ph.D."  (Doc. #22).  The declaration of

6  Dr. Lee appeared to be written in plaintiff's own handwriting.  In the declaration, Dr. Lee stated: "I

7  am the Chief medical doctor for Washington Correction [sic] Center and I have been the treating

8  doctor for Christopher Johnson prior to his incarceration and during incarceration."  (Doc. #22 at 1).

9  Dr. Lee further stated that Dr. Greisamer was not a licensed psychiatrist, and that Dr. Lee had also

10 worked at MCC.  (*Id.*)  Dr. Lee also stated that plaintiff is indeed a Senior U.S. Constable, and is

11 allergic to the medication that he was being forced to take.  (*Id.* at 2).

12      On July 29, 2005, defendants filed their answer to plaintiff's complaint.  (Doc. #23).  On

13 August 3, 2005, defendants filed a motion to strike Dr. Lee's declaration as fraudulent and, as a

14 sanction, to dismiss plaintiff's lawsuit under Rule 11 of the Federal Rules of Civil Procedure.  (Doc.

15 #24).  Attached to their motion was a declaration by Mike Watkins, the Health Care Manager at the

16 Washington Corrections Center.  Mr. Watkins stated that he had searched the Department of

17 Corrections' records and had found no person named John Henry Lee employed at any time at any

18 institution.  (*Id.*, Ex. 1 at 2).  Arguing that plaintiff had created a fictitious doctor and that such an act

19 is a "profound abuse of the judicial process," defendants requested that the court strike the

20 declaration and dismiss plaintiff's lawsuit.  Defendants' motion was noted for August 19, 2005.

---

[3] The procedure for this hearing was governed by Department of Corrections Policy Directive #630.540, which is entitled "Involuntary Medication Administration." (Doc. #18, Ex. 1, Attachment).  The Directive sets forth procedural safeguards that must be followed before a prisoner may be involuntarily medicated, including a hearing before a three-person panel.  Dr. Greisamer states in his declaration that such a panel met and voted three to zero in favor of continuing plaintiff's involuntary medication for 180 days.  (*Id.* at 2).  It appears, from a document recently filed by plaintiff, that a three-person panel met again recently and voted three to zero to continue the medication for another 180 days. (Doc. #29, Attachment at 1).

1  On August 10, 2005, plaintiff filed a response to defendants' motion to strike Dr. Lee's
2  declaration and for sanctions. (Doc. #26). In the response, plaintiff contended that Dr. Lee is not
3  fictitious and, as proof of Dr. Lee's existence, plaintiff attached an "authentic Court document" that
4  purportedly certified that Dr. Lee had treated plaintiff on numerous occasions (*Id*. at 1-2). Plaintiff
5  also reasserted that Dr. Greisamer is not licensed to practice medicine in Washington.

6  On August 12, 2005, counsel for defendants filed a declaration in reply to plaintiff's response,
7  in which counsel pointed out that the document that purportedly verified Dr. Lee's existence is
8  merely a form issued by the Clerk in another civil rights action brought by plaintiff (No. C04-5865-
9  RJB-KLS). On the form, Dr. Lee is listed in the caption as a defendant.[4] (*Id*., Ex. 1). Counsel also
10 stated in his declaration that a search of the appropriate websites on the Internet revealed that Dr.
11 Greisamer is licensed to practice medicine in Washington and that no doctor named "John Henry
12 Lee" lives in the state. Defendants did discover a doctor named "John Lee," who appeared to be a
13 radiologist, living in the area. (*Id*.)

14 On August 18, 2005, plaintiff filed a "motion for judgment as a matter of law based upon the
15 attached documents." (Doc. #29). Plaintiff supplemented this motion on August 24, 2005 with a
16 sheaf of documents which purport to be declarations from various people. (Doc. #31). On August
17 24, 2005, plaintiff filed a "motion for imminent help begging this court's immediate intervention."[5]
18 (Doc. #30). On August 30, 2005, defendants filed a response to plaintiff's "motion for judgment as a
19 matter of law." (Doc. #33).

20 On August 31, 2005, plaintiff filed a motion to strike defendants' motion to strike the

---

[4] However, it appears that the complaint in this case was never served on Dr. Lee because he was unable to be located. (*See* Doc. #10 in case No. C04-5865)

[5] Plaintiff also filed an "emergency motion for change of venue" to another federal court (Doc. #28), which the court construed as a motion to recuse the undersigned Magistrate Judge pursuant to 28 U.S.C. § 144. So construed, the motion was denied by the undersigned and then referred to Chief Judge Robert S. Lasnik, pursuant to Local Rule GR 8(c). Chief Judge Lasnik denied the motion on September 1, 2005. (Doc. #35).

REPORT & RECOMMENDATION
PAGE - 4

1  declaration of Dr. Lee.  (Doc. #34).  On September 1, 2005, the court ordered defendants to respond
2  to plaintiff's motion to strike defendants' motion, and specifically directed defendants to include a
3  declaration by Dr. Lee in their response.  (Doc. #36).  On September 7, 2005, plaintiff filed a
4  "motion in demand for judgment on emergent motion for preliminary injunction."  (Doc. #37).  On
5  September 8, 2005, defendants filed their response, indicating essentially that they had succeeded in
6  finding Dr. Lee's address, had sent him a letter, and were waiting to hear back from him.  (Doc.
7  #38).

## DISCUSSION

Currently before the court are the following motions: plaintiff's motion for preliminary injunction (Doc. #15), defendants' motion to strike the declaration of John Henry Lee and for sanctions (Doc. #24), and several related motions recently filed by plaintiff.  (Doc. #30, #34, #37). Because the first two motions are intertwined, the court will address them together.

### Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Strike and for Sanctions

The basic function of injunctive relief is to preserve the status quo *ante litem* pending a determination of the action on the merits.  *Los Angeles Memorial Coliseum Com'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).  A party seeking injunctive relief must fulfill one of two standards, the "traditional" or the "alternative."  *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).

> Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. . . . Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.

*Id.* (citations omitted).  In order to obtain injunctive relief, the moving party must demonstrate exposure to irreparable harm absent the requested judicial intervention.  *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Plaintiff's motion for preliminary injunction consists of four pages of allegations that

REPORT & RECOMMENDATION
PAGE - 5

1  essentially repeat those in his original complaint.  (Doc. #15).  The sole question he presents is
2  whether he is being harmed by the involuntary administration of medication.  While plaintiff's
3  motion contains dire assertions that he is being harmed because he is allergic to the medication, the
4  motion is unsupported by any evidence to that effect.

5  Defendants' response contains a single declaration, of the prison psychiatrist Thomas
6  Greisamer. (Doc. #18).  Dr. Greisamer's declaration supports defendants' position that plaintiff is
7  mentally ill and has shown no adverse reaction to olanzapine, the anti-psychotic medication he is
8  being forced to take.  (*Id.*, Ex. 1 at 2-3).  Plaintiff's reply to defendants' response is based solely on
9  the disputed declaration of Dr. Lee.  As discussed above, defendants argue that the declaration is
10 fraudulent and that plaintiff deliberately created a fictitious doctor in an attempt to bolster his case.

11 Because the court has yet to hear from the "real" Dr. Lee himself, it would be premature to
12 determine the authenticity of the two declarations filed by plaintiff from a person identified as "Dr.
13 Lee," or to rule on defendants' pending motion to strike the declaration and for sanctions.  However,
14 it is clear to the court that the declarations of Dr. Lee are sufficiently in question so that plaintiff has
15 failed to carry his burden in showing either that he is likely to prevail on the merits or that he will
16 suffer irreparable harm if his motion for a preliminary injunction is denied.  The only document that
17 appears to support any aspect of plaintiff's claim is an exhibit he recently provided which is entitled
18 "Involuntary Medication Report."  (Doc. #29, Exhibit 1).  This report was signed by Dr. Greisamer
19 on July 28, 2005 and contains the following notations: "[Plaintiff] has not been eating on a regular
20 basis – he has been placed in the ITU because he has missed more than nine meals – which he denies.
21 He has requested diet supplements, but then hidden them in his cell or flushed them down the toilet. .
22 . . [Plaintiff] believes that the medication he's taking is causing him medical problems – a complete
23 medical work-up shows no evidence of supporting findings.  He is eating on irregular basis and
24 usually will not communicate with staff – and when he does it is with vulgar, vile language . . .
25 threatening staff with physical harm or legal actions."  (*Id.*)

26 This document, however, merely supports plaintiff's allegation that he is losing weight.  It

REPORT & RECOMMENDATION
PAGE - 6

1  does not support his allegation that he is losing weight due to being allergic to his medication. Thus,
2  plaintiff has failed to show either that he will suffer irreparable injury if the injunction does not issue,
3  or that he will probably prevail on the merits. His motion for preliminary injunction should therefore
4  be denied.

Plaintiff's Related Motions

Plaintiff has filed several motions related to his motion for preliminary injunction: a "motion for judgment as a matter of law," (Doc. #29); a "motion for imminent help," (Doc. #30), a motion to strike defendants' motion to strike (Doc. #34), and a "motion in demand for judgment." (Doc. #37). Two of these motions (Doc. #30 and #37) essentially ask for an immediate ruling on plaintiff's motion for preliminary injunction. Accordingly, they may be denied as moot. Plaintiff's motion to strike defendants' motion to strike (Doc. #34) should be construed as a supplement to his previous response to defendants' motion. Finally, plaintiff's motion for judgment as a matter of law (Doc. #29) contains declarations by numerous individuals, including a "former Texas congressmen [sic]" named "Carl Jean Young," (Doc. #31, Ex. 1 at 1), who purport to know plaintiff and support him in general. None are health professionals, however, and the declarations thus do not support plaintiff's medical claims. The declarations do bear a troubling similarity to the declaration of Dr. Lee in that they are all written in what appears to be plaintiff's own handwriting and are not notarized. Because the declarations raise similar issues of authenticity as does Dr. Lee's, plaintiff's motion for judgment as a matter of law will be considered at the same time as defendants' motion for sanctions.

CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction and several related motions should be denied. In addition, defendants' motion for sanctions and plaintiff's motion for judgment as a matter of law are renoted for consideration on September 23, 2005. A proposed Order accompanies this Report and Recommendation.

REPORT & RECOMMENDATION
PAGE - 7

DATED this 9th day of September, 2005.

/s/ James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge